**In re PRUDENCE BONDS CORPORATION.**

District Court, E. D. New York.
Oct. 29, 1935.

Powell & Ruch, of New York City, for debtor, for the motion.

George M. Jaffin and Leonard Klaber, both of New York City, opposed.

Percival E. Jackson, of New York City, for Prudence Advisory Group.

Alfred H. Cumbers, for the motion.

Frederick Sperling, of New York City, executor of Edgar E. Fran's estate.

Archibald Palmer, of New York City, for creditors' committee.

Alexander E. Klupt, of New York City, for Fanny Zukerbrot (bondholder).

Mr. Silbrigger, in opposition.

Wise, Shepard & Houghton (by Ralph A. Newman), of New York City, for Bondholders' Protective Committee.

McKercher & Link (by Charles H. Buckley), of New York City, for bondholder.

INCH, District Judge.

The well-considered report of James G. Moore, special master, clearly sets forth the proposed adjustment or plan of this Fifteenth Series.

I have carefully considered all the briefs submitted, both for and against the plan, as well as the oral arguments made at the hearing thereon.

It seems to me that the plan proposed is a fair and feasible one provided the certain suggestions which I am about to make are followed.

Of course, no confirmation of the plan can take place until it has been accepted by the required number of consents, but I see nothing in the objection that this court must refrain from expressing its opinion of the proposed plan until such consents have been filed and the matter is before the court for final confirmation. On the contrary, it is now the duty of the court to duly consider the plan proposed.

Objections as to jurisdiction, and generally to the plan, have either been heretofore duly considered in court proceedings or are insufficient to justify further delay of this important matter.

The suggestions which I make are reflected in some of the objections filed.

First. The proposed supervision over directors or check upon their action by a stranger, a trustee or otherwise, is plainly not feasible. Nor can a court continue to run the business of a corporation indefinitely.

There is, however, clearly presented, a situation where a conflict of interest between this debtor and various affiliated corporations may arise in the future. The bondholders are entitled to have proper protection from any action on the part of directors which might be, or even seem to be, dictated by self-interest rather than wholly in the interest of the debtor and bondholders.

Accordingly, it should be provided that where the title to property covered by a mortgage, constituting a part of the collateral, or a junior participating interest in same, is owned by one of these affiliated corporations, then, and in such case, no reduction in rate of interest or in principal nor extension of such mortgage shall be valid unless such reduction or extension has been first duly passed upon and approved by a majority of those representing the bondholders on the board of directors. I suggest that similar control be given to such representatives of the bondholders in regard to any questions which a conflict of interest may occasion in connection with the management of the property by an affiliated corporation.

The above seems to me to accomplish the proper protection of the bondholders who are to have three members on a board of seven and should be sufficient, it seems to me, to relieve any fear apparently existing behind some of the objections filed. It will place proper control in the bondholders where a possible conflict of interest may arise, otherwise the bondholders' representation of three members will be sufficient.

The second suggestion relates to the so-called condemnation money. The question here is, whether this money should be distributed pro rata when received and thus reduce the principal of the bonds or should it be put into the retiring fund, available for the retirement of bonds of this Fifteenth Series, either by purchase or on tender?

Much can be said in favor of the immediate distribution when the money is actually received, but, after all, this will mean but a small payment to those who are not in a position to further carry their investment, and it will mean even less to those who are in a stronger financial condition. On the other hand, there is good reason for the placing of this money, when received, in the retirement fund. I think it cannot be seriously disputed that the existence of such a fund will favorably affect the purchase value of the bonds, and thus a bondholder, who feels he must or should sell, has created for him, in this way, a market whereby he may dispose of his bond to a greater advantage than if no such fund existed. It will take some time, in the absence of such deposit to create a useful fund. In this way a bondholder will be placed in a better financial position than if he received a small pro rata payment, and in so doing also exhausted the award money and the fund.

The plan contemplates that where the retirement fund equals $100,000, tenders must be called for and the corporation is obliged to use the moneys in this fund to take up these tenders unless it can purchase the bonds in the open market at a less price than the lowest tenders on hand.

I therefore suggest that on account of the size of this award ($400,000) the sum of $175,000 be distributed pro rata immediately upon its receipt, which will add an additional $4 to the $6 called for by the plan, and the balance ($225,000) be placed in the retirement fund, thus accomplishing as soon as possible, the creation of such a fund and at the same time distributing to the bondholders some of the money.

Finally, it seems to me, that as to the past servicing the compensation should be the same as that company has been receiving since the early part of 1933.