**In re PRESSED STEEL CAR CO. OF NEW JERSEY.**

**No. 18779.**

District Court, W. D. Pennsylvania.
Jan. 6, 1936.

326

See, also, (D.C.) 16 F.Supp. 329.

Reed, Smith, Shaw & McClay (by Robt. Dodds, of Pittsburgh, Pa.), and William G. Heiner, all of Pittsburgh, Pa., for debtor company.

Thorp, Bostwick, Reed & Armstrong, of Pittsburgh, Pa. (by Earl F. Reed and C. M. Thorp, Jr., both of Pittsburgh, Pa.), for trustees.

Cravath, de Gersdorff, Swaine & Wood, of New York City (by Leonard D. Adkins, of New York City), for reorganization managers.

White & Case, of New York City (by Albert W. Sloan, of Pittsburgh, Pa.), and Rose & Eichenauer, of Pittsburgh, Pa. (by Howard M. Swartz, of Pittsburgh, Pa.), for New York Trust Co.

Sachs & Caplan, of Pittsburgh, Pa. (by Chas. H. Sachs, of Pittsburgh, Pa.), and Hartman, Sheridan, Tekulsky & Pecora and Benjamin A. Hartstein, all of New York City, for committee for protection of preferred stockholders.

Chadbourne, Stanchfield & Levy, C. B. Hughes, Percival E. Jackson, and Tachna & Pinkussohn, all of New York City, for committee for protection of bondholders (Hayden committee).

David M. Palley, of New York City, for Martha Snyder and others.

GIBSON, District Judge.

A hearing was held on December 23, 1935, upon a petition of the trustees for instructions as to the sending out of various plans of reorganization that have been filed in this proceeding and several amendments to the various plans theretofore filed were presented and considered at the hearing. Two of the plans in their amended forms, which were urged upon the court at the hearing by committee of bondholders and preferred stockholders, respectively, were proposed as amendments to the plan of the debtor corporation previously filed. At the hearing, however, the debtor corporation proposed an entirely new plan and asked leave to withdraw its former plan. The court permitted the debtor corporation to file its new plan at the hearing, which is the plan referred to herein as the "Debtor's Plan," but also heard arguments upon the other two plans presented by committees of the stockholders and bondholders, as though they had been proposed with the requisite consents of security holders, and they have been so treated in this consideration of the plans. Subsequent to the hearing the two committees, which had presented and urged separate plans as amendments to the debtor's original plan, consolidated their plans, and on January 2, 1936, filed a consolidated plan of reorganization, which plan has been considered by the Court and is herein referred to as the "Joint Committee Plan."

Most of the proponents of plans at the hearing were in agreement that only one plan should be sent out at a time to

security holders, as the sending out of several plans would only confuse them and undoubtedly result in no plan receiving the approval of the requisite number of creditors and stockholders. There are upwards of 8,000 security holders of this company, and considering the complex nature of the corporate organization, I am inclined to agree with counsel that it would only confuse the situation to submit more than one plan at a time. The proponents of each plan also sought tentative approval from the court of their respective plans, and I have therefore considered the two plans now before me—the joint committee plan and the debtor's plan—to reach a determination as to which plan should receive tentative approval and be sent to the creditors and security holders first. Such tentative approval to a plan was given by the District Court of the Western District of Missouri, in the Matter of Long-Bell Lumber Company (C.C.H. 3607),[1] and also by the District Court of the Eastern District of New York, in the Matter of Prudence Bond Corporation, 16 F.Supp. 324. In so expressing my qualified approval of one of the plans before me, it must be understood that the approval is only tentative. If the plan now so approved should receive the consent of the requisite number of creditors and stockholders and come before me for final confirmation, objections may be urged which do not occur to me now, or security holders who were not notified and not present at the hearing of December 23d, may urge objections that seem persuasive and my present tentative approval of a plan is with the full reservation on my part to modify the plan which I am now approving, or to disapprove it entirely, if objections thereto appear persuasive on final hearing.

■ The corporation, at the time of the institution of this proceeding, had no mortgage indebtedness, but had outstanding issues of debentures in the face amount of $3,387,000. It had practically no other creditors except a small amount of trade accounts due to current operations. It has outstanding 136,015 shares of preferred stock of $100 par value and 411,204 shares of common stock without par value.

The several plans submitted prior to the hearing and the joint committee plan submitted subsequent to the hearing are all predicated upon the creation of a mortgage bond issue on all the properties of the company and the sale to the public or to underwriters of mortgage bonds, which would be prior to the company's debentures outstanding. The plan proposed by the debtor corporation at the hearing is not predicated upon a mortgage bond issue, but contemplates the sale of $1,500,000 of First preferred stock, $5 par, having certain rights of conversion into common stock. The present debenture holders under the debtor's plan are to receive new debentures for the principal amount of their present debentures and accumulated interest, which debentures will be the first obligation of the new company.

I am not attempting, in this memorandum, to go into the full details of the plans, but it seems to me that any plan of reorganization which leaves this company free from mortgage debt is so obviously better for the company than one which encumbers its entire assets, that if it is acceptable to the creditors and stockholders and feasible, it would be much superior to a plan without such feature. It seems to me that the debtor's plan, which leaves the present debenture holders in practically the same position they are in now and puts substantial funds into the company behind their claims, will undoubtedly receive the consent of the requisite two-thirds amount of debenture holders and one committee of debenture holders professing to represent a large number of debenture holders appeared at the hearing in favor of this plan and has filed a brief in support of it.

Preferred stockholders and common stockholders undoubtedly expect that any new funds which come into this company will rank prior to them with respect to the new money, and it is certainly an advantage to the stockholders of the old company if the new company can begin operations with its property free and clear from mortgage indebtedness. Such a situation will undoubtedly assist the credit of the new company and launch the new enterprise under circumstances which would promise more for the existing stockholders than if the property were mortgaged.

■ It appears from the debtor's plan that $1,000,000 of the new money proposed to be put into the company is to be supplied by the General American Transportation Company, and it was argued at the hearing that this company was a competitor, to some extent, of the Pressed Steel Car Com-

---

[1] No opinion filed.

pany. On the other hand, counsel for the debtor's plan assert in argument that the General American Transportation Company. the subscriber to two-thirds of the new stock, competes in only a very insubstantial way with the business of the Pressed Steel Car Company, and the fact that a very full disclosure is made of its interest in this proposition impels me to think that the objection is not a valid one, as relates to the sending out of the plan for approval. If there were any intention on the part of the General American Transportation Company to injure the debtor company, it would seem to me that it would be doing a foolish thing to put in so large an amount of money in a junior position as respects security, and, of course, if any such injury were attempted, the stockholders or creditors would have their legal rights to protection. In order, however, that there may be the fullest hearing upon this phase of the matter if the plan comes up for final confirmation, I instruct the trustees to notify the United States Department of Justice of this proposed plan and the date of final hearing if it comes on for confirmation, so that there shall be a full hearing of the extent to which the acquisition of an interest in this company by the General American Transportation Company might affect competition in this industry.

It was also suggested at the hearing that although the General American Transportation Company would not have a majority of the voting stock of the company (even if it exercised its conversion rights), it would have practical control. I recognize, of course, that a corporation may be practically controlled by much less than a majority of its stock, but it seems to me that this is a matter on which the security holders have a right to vote. They may be willing or desire to have their company controlled or managed by another successful company in a related line of the same industry, and I think it is not unreasonable to expect those who put in new money junior to existing debentures to demand some kind of partial control of the company to protect their investment.

It has also been urged that the funds so to be provided by the debtor's plan will not be adequate to carry on the reorganized company. It is true that they are not as great as those to be provided by the mortgage contemplated in the joint committee plan ($2,485,081.00), and I am inclined to the opinion that there is some

merit to this objection and I have decided to impose a condition upon my testative approval of this plan which, if accepted, will increase somewhat the cash to be paid into the company. I think it is clear, however, that even if the cash to be received as a result of the consummation of the debtor's plan should not be quite equal to that which might be received from the placing of a mortgage upon the properties, yet the improved financial condition of the new venture, being free from mortgage, would greatly facilitate its financing of unusual manufacturing needs by bank loans.

It was also urged at the hearing that the debtor's plan did not afford an opportunity to the existing stockholders of the company to provide the funds necessary for its rehabilitation, and I am impressed by this argument. If the existing shareholders can provide the funds necessary to put this plan into operation, they should certainly have the opportunity to do so, and I am imposing as a condition upon my tentative approval of this plan that they do have such opportunity. I realize, however, that the General American Transportation Company would not want to be left with merely a fragmentary holding, and that unless its holdings were substantial, it would not want to put its money in this proposed secondary position. Even if the shareholders of the company should not be able to provide enough money to make the plan effective without the assistance of the General American Transportation Company, or a public sale of the new First preferred stock, I still think they should have some right to participate on the same basis with the new money coming in to the company, although, of course, it would have to be to a much more limited extent, and I am therefore also imposing a condition to my tentative approval of this plan which will enable the existing stockholders, even if they should not be able to entirely finance the plan themselves, to have some participation on a par with the new money.

There has been no determination as yet as to whether or not the common stockholders of the company have an equity in its property which would entitle them to vote on any plan of reorganization. That question could not be determined except upon an extensive hearing as to the value of the assets of the company, and I am making no determination of that at this time, but ordering the plan to be submitted to each group of stockholders, reserving the

right to determine whether or not either group has an interest which is affected by the plan.

I therefore shall direct the trustees, by subsequent order, to send out to the creditors who have proven their claims pursuant to notice heretofore given, and to all the preferred and common stockholders of record January 15, 1936, the debtor's plan of reorganization for its acceptance or rejection by them, provided it be modified in the following particulars:

(a) That the authorized issue of First preferred stock be in the amount of $2,150,000 ($5 par) instead of $1,500,000, as stated in the debtor's plan now on file.

(b) That in the notice sending out this plan there shall be an option given, which may be referred to as "Option No. 1," to each holder of a share of preferred stock to subscribe for five shares of new First preferred stock, and to each holder of a share of 'common stock to subscribe for one share of new First preferred stock. It shall be stated in the notice that if the subscriptions thereto exceed $2,150,000, the allotments will be prorated in proportion to the respective stockholdings of the subscribers; the holder of a share of preferred stock to be considered in such prorating as entitled to ten times as many new shares as the holder of a share of common stock.

(c) If the subscriptions so received from the shareholders equal $1,750,000, and the requisite number of consents to the plan are obtained, Option No. 1 shall be deemed to have been accepted and the plan will come on for final confirmation, to be put into effect out of the funds so subscribed by existing stockholders, without any subscription on the part of the General American Transportation Company or any underwriters.

(d) In the event the debtor's plan receives the requisite consents, but the total subscriptions so made by existing stockholders for new First preferred stock shall not equal $1,750,000, then the General American Transportation Company and the underwriters of the debtor's plan shall purchase $1,750,000 of the new First preferred stock and the remaining $400,000 thereof shall be offered to the existing stockholders of the company; this option to be known as "Option No. 2."

(e) The $400,000 par value First preferred stock shall be offered to the existing stockholders, $300,000 thereof to the

preferred stockholders and $100,000 to the common stockholders, each stockholder to be entitled to buy only his proportion of the amount of stock allotted to his class of stockholders; the General American Transportation Company and the underwriters to have the right to take up any stock not taken up by stockholders, as provided in Option No. 2.

(f) Existing stockholders, in subscribing for shares of First preferred stock under either option, shall be required to deposit with the trustee 25 per cent. of the amount of their subscriptions, but in voting to accept both options, only one deposit need be made, which is to be the amount of the larger deposit required under either option.

If the debtor corporation, the General American Transportation Company, and the underwriters of the debtor's plan shall, within ten days, file their written acceptance of these conditions, the trustees will be directed to send out the debtor's plan with these amendments, or to send out a new plan if filed by the debtor, embodying these conditions and amendments.

If such acceptances are not filed within ten days from the filing of this memorandum, further consideration will be given by the court to the joint committee plan on file.